**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CANAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-411-JHP-TLW |
| | ) | |
| MONTELLO, INC. | ) | |
| | ) | |
| Defendant/Third-Party | ) | |
| Plaintiff/Counter-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HARTFORD FINANCIAL SERVICES | ) | |
| GROUP, INC., CONTINENTAL | ) | |
| CASUALTY COMPANY, HOUSTON | ) | |
| GENERAL INSURANCE COMPANY, | ) | |
| NATIONAL INDEMNITY COMPANY, | ) | |
| SCOTTSDALE INSURANCE | ) | |
| COMPANY, & TWIN CITY FIRE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## OPINION & ORDER

Before the court is Third-Party Defendant Hartford Financial Services Group, Inc.'s

("Hartford's") Motion to Dismiss Montello, Inc's Third Party Complaint (Docket No. 60,

hereinafter "Motion to Dismiss") and Brief in Support (Docket No. 61), Defendant/Third-Party

Plaintiff Montello, Inc.'s Response to the Motion to Dismiss (Docket No. 82), and Hartford's

Reply to Montello's Reponse (Docket No. 86).  Also before the court is Hartford's Motion to

Strike Portions of Montello, Inc's Third Party Complaint (Docket No. 62, hereinafter "Motion to

Strike"), in which Hartford adopts its argument in support for its Motion to Dismiss.  The Motion

to Strike is fully briefed, each of the parties relying upon their arguments in support of or against

the Motion to Dismiss.  *See generally* Docket Nos. 83, 87.  Therefore, the court's ruling on the

Motion to Strike will mirror its ruling on the Motion to Dismiss.  For the reasons cited herein,

Hartford's Motion to Dismiss and Motion to Strike are DENIED IN PART and GRANTED IN

PART.

FACTS and PROCEDURAL HISTORY

This case was instigated as a declaratory judgment action by Plaintiff/Counter-Defendant

Canal Insurance Company ("Canal") against Defendant/Counter-Claimant/Third-Party Plaintiff

Montello, Inc. on June 25, 2010.  Docket No. 2.  Montello responded by filing (a) an Answer to

Canal's Complaint (Docket No. 20), (b) a counterclaim against Canal for declaratory judgment

and Breach of Contract (Docket No. 21), and (c) a third-party complaint against a number of

third-party defendants, including Hartford and its subsidiary Third-Party Defendant Twin City

Fire Insurance Company ("Twin City"), requesting a declaratory judgment against the Third-

Party Defendants (Docket No. 22).  Hartford did not answer the Third-Party Complaint and

instead filed this Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6).  Docket No. 60.

Montello "was a distributor of products used in the oil-drilling industry."  Montello's

Answer to Canal's Complaint at 2, Docket No. 20.  One product distributed by Montello for a

period of time was "a drilling mud additive that was asbestos."  *See id.*  Montello has now "been

sued by many individuals who were allegedly exposed to asbestos through Montello's products."

*See id.*  The parties refer to these numerous lawsuits brought by individuals against Montello as

the "Underlying Litigation."  *See, e.g., id.*  The Underlying Litigation has prompted Montello to

seek liability coverage from the group of insurers involved in this case, most[4] of whom are

alleged to have insured Montello during the time period it distributed products containing

asbestos.  *See* Third-Party Complaint at 3-4, 8, Docket No. 22; Counterclaim at 2, Docket No.

---

[4] *See infra* n.3.

21.  In essence, this case is one in which the parties are seeking declaratory judgments regarding which of them, if any, must "foot the bill" for the costly and expansive[5] asbestos litigation in which Montello must defend itself.

Unlike the majority of the insurance companies in this case, Hartford is not alleged to have insured Montello during the time period that Montello sold products containing asbestos.[6] Instead, Montello alleges that Hartford is subject to suit as a result of its ownership of Twin City, which directly insured Montello between March 1982 and March 1983.  *See generally* Third-Party Complaint at 9-14, Docket No. 22.  To this end, Montello alleges that Twin City is a "mere

---

[5] In its Third-Party Complaint, Montello relates that,

> Montello is presently named in hundreds of pending liability suits in various states, alleging damages, including personal injury, and wrongful death and other damages, as a result of alleged exposure to products allegedly manufacturer [*sic*], distributed, sold or otherwise put into the stream of commerce by Montello in the State of Oklahoma, and elsewhere.  Montello continues to be sued for liability in Oklahoma and other states. . . . To date, Montello has incurred substantial damages because of investigating, defending against, and paying damages resulting from the underlying litigation.

Third-Party Complaint at 7, Docket No. 22.

[6] A compilation of Montello's allegations in the Counterclaim (Docket No. 21 at 2) and Third-Party Complaint (Docket No. 22 at 8) yields the following schedule for which party insured Montello at which time:

| Time Period | Insurance Company |
| --- | --- |
| December 1968 - December 1974 | Continental Casualty Company/ "CNA" |
| December 1978 - March 1981 | Houston General Insurance Company |
| March 1, 1981 - March 1, 1982 | Canal Insurance Company |
| March 1982 - March 1983 | Twin City Fire Insurance Company |
| March 1, 1983 - March 1, 1985 | Canal Insurance Company |
| March 1985 - March 1986 | Scottsdale Insurance Company |

Third-Party Defendants National Indemnity Company (movant in the Motion for Judgment on the Pleadings, *see* Docket Nos. 88, 90, 91) and Hartford (movant in the  Motion to Dismiss *sub judice*) are not alleged to have directly insured Montello.

shell or conduit for its insurance business directed to and derived from Montello's [*sic*] and its other insureds" and that "an injustice will occur if the fiction of corporate separateness between Hartford and Twin City is not disregarded. *See id.* at 13.  Alternatively, Montello argues that Hartford is liable for Twin City's debts based on an agency theory. *See id.* at 14. Unsurprisingly, Hartford opposes these propositions, and argues that Montello has failed to state a claim under the pleading standards delineated in Fed. R. Civ. P. 8(a) and 9(b).  *See* Motion to Dismiss at 7, Docket No. 60.

## DISCUSSION

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted.  A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citation omitted).  For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. *Id.*  However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). Montello makes alternative allegations stating its ability to bring a case directly against Hartford: (1) that Hartford and Twin City are alter egos of each other, therefore the corporate veil may be pierced to hold Hartford vicariously liable for any of Twin City's liabilities (*see* Third Party Complaint at 9-14, Docket No. 22), and (2) that Hartford and Twin City are "agents, partners,

4

joint ventures, or co-conspirators of each other" (*id.* at 14).  The court will address these

arguments in turn.

    I.   Alter-Ego Liability

    A.  Choice of Law

    The first step in any choice of law analysis is to determine whether there is a conflict of

laws.  The law of both Indiana, the state in which Twin City is incorporated, and Oklahoma, the

state in which this action was brought, potentially apply to this case.  If there is no conflict

between the laws of the two states, the court will apply Oklahoma law.  If there is a conflict

between the two laws, the court will look to Oklahoma choice of law rules to determine whether

the application of Indiana or Oklahoma law is appropriate.

    Analysis of the laws of Indiana and Oklahoma reveal that there is a conflict of law

between the states regarding the requirements for piercing the corporate veil.[7]  Oklahoma law

states, "One corporation may be held liable for the acts of another under the theory of alter-ego

liability if (1) the separate existence is a design or scheme to perpetuate a fraud *or* (2) one

corporation is merely an instrumentality or agent of the other."  Gilbert v. Sec. Fin. Corp. of

Okla., 152 P.3d 165, 175, 2006 OK 58, ¶¶ 22-23 (citing Gibson Prod. Co., Inc. of Tulsa v.

Murphy, 100 P.2d 453, 458, 1940 OK 100, ¶ 36) (emphasis supplied).  Oklahoma law also

includes a list of nine factors[8] that courts may consider when determining whether to hold one

---

[7] Generally, a parent company is not liable for the acts of its subsidiaries.  *See* United States v.
Bestfoods, 524 U.S. 51, 61 (1998).  However, under certain circumstances delineated by state
law, parent companies can be held liable for the debts of subsidiaries.  This upward transfer of
liability is referred to as "piercing the corporate veil."  Oklahoma and Indiana law provide
different tests for when it is appropriate to "pierce the corporate veil," and those laws are at issue
in this motion.

[8] Under Oklahoma law, "[t]he factors for determining if one corporation may be held liable for
the acts of another . . . . include: (1) whether the dominant corporation owns or subscribes to all
the subservient corporation's stock, (2) whether the dominant corporation and subservient

corporation liable for the acts of another corporation—the factors "hinge primarily on control."

*Id.* at 175, 2006 OK 58, ¶ 23 (citing Oliver v. Farmers Ins. Group of Cos., 941 P.2d 985, 987,

1997 OK 71, ¶ 8).  As seen *supra*, Oklahoma law is stated in the disjunctive, requiring *either* a

showing fraud or that one corporation is merely the instrumentality of another.

   In contrast, Indiana law is stated in the conjunctive: a party seeking to pierce the

corporate veil of an Indiana corporation must prove "by a preponderance of the evidence 'that

[1] the corporate form was so ignored, controlled or manipulated that it was merely the

instrumentality of another, *and* [2] that the misuse of the corporate form would constitute a fraud

or promote injustice.'"  Escobedo v. BHM Health Assocs., Inc., 818 N.E.2d 930, 933 (Ind. 2004)

(citing Aronson v. Price, 644 N.E.2d 864, 867 (Ind. 1994) (citing extensive line of supporting

caselaw)) (emphasis supplied); *see also* Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC, 870

N.E.2d 494, 504 (Ind. Ct. App. 2007) ("A party seeking to pierce the corporate veil bears the

burden of establishing that the corporation was so ignored, controlled, or manipulated that it was

merely the instrumentality of another *and* that the misuse of the corporate form would constitute

a fraud or promote injustice.") (citing Gurnik v. Lee, 587 N.E.2d 706, 710 (Ind. Ct. App. 1992))

(emphasis supplied).  Similar to Oklahoma, Indiana law delineates eight "guideposts"[9] courts

---

corporations have common directors and officers, (3) whether the dominant corporation provides
financing to the subservient corporation, (4) whether the subservient corporation is grossly
undercapitalized, (5) whether the dominant corporation pays the salaries, expenses, or losses of
the subservient corporation, (6) whether most of the subservient corporation's business is with
the dominant corporation or the subservient corporation's assets were conveyed from the
dominant corporation, (7) whether the dominant corporation refers to the subservient corporation
as a division or department, (8) whether the subservient corporation's officers or directors follow
the dominant corporation's directions, and (9) whether the corporations observe the legal
formalities for keeping the entities separate." *Gilbert*, 152 P.3d at 175, 2006 OK 58, ¶ 23 (citing
Oliver v. Farmers Ins. Group of Cos., 941 P.2d 985, 987, 1997 OK 71, ¶ 8).
[9] The eight factors considered under Indiana law include: "(1) undercapitalization; (2) absence of
corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use
of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation

may consider when determining whether to pierce the corporate veil.  *Escobedo*, 818 N.E.2d at

933 (citing *Aronson*, 644 N.E.2d at 867).

There is a clear distinction between Oklahoma and Indiana law regarding the piercing of

the corporate veil: Oklahoma law requires the party attempting to pierce the corporate veil to

demonstrate *either* (1) the corporate scheme is a design to perpetrate a fraud *or* (2) one

corporation is merely an instrumentality of the other while Indiana law requires the plaintiff to

meet the more onerous standard of demonstrating *both* (1) one corporation was merely an

instrumentality of another, *and* (2) the misuse of the corporate form would "constitute a fraud *or*

promote injustice."  *See id.*; *Gilbert*, 152 P.3d at 175, 2006 OK 58, ¶ 22.  Montello correctly

states that neither Oklahoma nor Indiana law require the plaintiff to demonstrate fraud because

Oklahoma's rule is stated in the disjunctive and Indiana law requires an allegation of fraud *or*

injustice.  However, this similarity is insufficient to establish that the laws are "similar" for the

purposes of choice of law standards.  Indiana law clearly places upon the party seeking to pierce

the corporate veil the more onerous burden of showing both the "instrumentality" prong of the

test and that the misuse of the corporate form would "constitute fraud or promote injustice."

This court notes that application of Indiana's more onerous burden while interpreting a pleading

under Rule 12(b)(6) standards could result in a different outcome, i.e. dismissal of the claim

under Indiana law, and allowing the claim to proceed under Oklahoma law.  Because the

---

or individual obligations; (6) commingling of assets and affairs; (7) failure to observe required
corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or
manipulating the corporate form."  *Escobedo*, 818 N.E.2d at 933 (citing *Aronson*, 644 N.E.2d at
867).

difference between the conjunctive and disjunctive could be dispositive on a 12(b)(6) motion, the

court finds that the laws of Oklahoma and Indiana conflict.[10]

Having found that the laws of Oklahoma and Indiana conflict, the court's next step is to

determine which law applies to resolve this motion.  In diversity actions, the choice of law is

determined by the law of the forum state, in this case Oklahoma.  Elec. Distrib. Inc. v. SFR, Inc.,

166 F.3d 1074, 1083 (10th Cir. 1999) (When "making a choice of law determination, a federal

court sitting in diversity must apply the choice of law of the forum state in which it is sitting.").

As it appears that Oklahoma courts have not yet determined the issue of what state's law to apply

when determining whether to pierce the corporate veil, this court must decide the conflict of law

issue as it believes the Oklahoma Supreme Court would decide it.  *See* Wammock v. Celotex

Corp., 835 F.2d 818, 820 (11th Cir. 1988).  The Northern District of Oklahoma recently issued an

opinion dealing with the precise issue of how Oklahoma courts would determine the applicable

law when presented with a conflict of law regarding alter-ego liability.  *See generally* Tomlinson

---

[10] To make the argument that the laws of Oklahoma and Indiana are similar, Montello relies on *Yoder v. Honeywell, Inc.*, a Tenth Circuit case.  In *Yoder*, the Tenth Circuit analyzed whether Delaware or Colorado law applied to the issue of corporate veil piercing.  *See* Yoder v. Honeywell, Inc., 104 F.3d 1215, 1220 (10th Cir. 1997).  The Tenth Circuit found that the laws of Delaware and Colorado were similar, despite recognizing that "Delaware may require somewhat more to pierce a corporate veil."  *Id.*  Delaware law was stated in the disjunctive and did not require a showing of fraud; plaintiff is required "show fraud *or* 'that the parent and the subsidiary operated as a single economic entity' and 'that an overall element of injustice or unfairness' is present."  *Id.* (citing Geyer v. Ingersoll Publications Co., 621 A.2d 784, 793 (Del. Ch. 1992)).  Colorado law listed ten factors to "consider in determining whether subsidiary is instrumentality of parent" and also required consideration of whether there was an element of injustice.  *Id.* (citing Lowell Staats Mining Co. v. Pioneer Uravan, Inc., 878 F.2d 1259, 1262 (10th Cir. 1989)).  *Yoder* is distinguishable in that neither the laws of Delaware nor Colorado involved corporate veil-piercing tests stated in the *conjunctive* as Indiana's is stated.  Furthermore, there is no indication that Delaware's "somewhat" more burdensome standard would be dispositive to the court's ruling.  Indiana's law, requiring the plaintiff to prove that the misuse of corporate structure constitutes fraud or promotes injustice, when placed in contrast to Oklahoma's law which has no such requirement, is substantially more burdensome than Oklahoma law.  *Yoder* does not apply to the facts of this case.

v. Combined Underwriters Life Ins. Co., 2009 WL 2601940 (N.D. Okla.) (unpublished).  The

court begins by citing the Restatement (Second) of Conflicts of Laws, which provides: "The

local law of the state of incorporation will be applied to determine the existence and extent of a

shareholder's liability to the corporation for assessments or contributions and to its creditors for

corporate debts."  *See id.* at *2 (quoting RESTATEMENT (SECOND) CONFLICTS OF LAWS § 307

(1971)) (noting that "[m]any jurisdictions have cited § 307 as indicating that the law of the state

of incorporation governs veil piercing claims) (collecting cases).  This court agrees with the

*Tomlinson* analysis:

> Although . . . Oklahoma courts have not addressed application of § 307 in the
> veil-piercing context, Oklahoma courts have previously followed other provisions
> of the Restatement (Second) of Conflicts of Laws. . . . Plaintiff has cited no cases
> indicating that the Oklahoma Supreme Court would disregard § 307 in
> determining which state law to apply.   Accordingly, based on citation to
> Restatement (Second) of Conflicts of Laws in other circumstances, the Court
> finds that the Oklahoma Supreme Court would follow § 307 in holding that the
> state of incorporation's law applies to issues of piercing the corporate veil.
> . . . .
> Further supporting the Court's conclusion is the fact that the majority of
> jurisdictions addressing this question have also applied the law of the state of
> incorporation to veil-piercing issues.

*Id.* at *2-*3 (citations omitted) (collecting cases).  Following the well-reasoned analysis found in

*Tomlinson*, this court concurs that Oklahoma courts would follow the Restatement (Second) of

Conflicts of Laws § 307, which provides that when a conflict of laws arises with regard to

piercing the corporate veil, the law of the state of incorporation will be applied to determine

whether piercing the corporate veil is appropriate.[11]  Therefore this court finds that Indiana law

---

[11] This finding comports with United States Supreme Court precedent known as the
"internal affairs doctrine," which recognizes that "only one State should have the authority to
regulate a corporation's internal affairs-matters peculiar to the relationships among or between
the corporation and its current officers, directors, and shareholders-because otherwise a
corporation could be faced with conflicting demands."  *Id.* (citing Restatement (Second) Conflict
of Laws § 302 cmt. b (1971)); *see also* CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 91

applies to determine whether the corporate veil of Twin City, a corporation incorporated under the laws of Indiana, should be pierced.

### B.  Applicable Pleading Standard

The next issue to determine is whether, for purposes of the Fed. R. Civ. P. 12(b)(6) motion *sub judice*, Montello's Third-Party Complaint is subject to evaluation under a the heightened pleading standard pursuant to Fed. R. Civ. P. 9(b).  Generally, to bypass a motion to dismiss based on Rule 12(b)(6), a plaintiff must only make a "short and plain statement" of the grounds for the court's jurisdiction and the claim alleged.  Fed. R. Civ. P. 8(a)(1-2).  However, when making allegations of fraud or mistake, the pleader "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Hartford has argued that Montello has failed to state a claim because it has not complied with the heightened pleading standard applicable to allegations of fraud pursuant to Rule 9(b).

As noted previously, to pierce the corporate veil under Indiana law, the plaintiff must show that, "[1] the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another, *and* [2] that the misuse of the corporate form would constitute a fraud *or* promote injustice."  Escobedo v. BHM Health Assocs., Inc., 818 N.E.2d 930, 933 (Ind. 2004).  While the conjunctive nature of the test requires the plaintiff to show both elements to pierce the corporate veil, the plaintiff is not required to specifically plead that the misuse constituted fraud, because it may alternatively allege that the misuse promoted injustice.  *See* Fairfield Dev., Inc. v. Georgetown Woods Sr. Apartments Ltd., 768 N.E.2d 463, 473 n.1 (Ind.

---

(1987) ("It is an accepted part of the business landscape in this country for States to create corporations, to prescribe their powers, and to define the rights that are acquired by purchasing their shares.").

Ct. App. 2002) (recognizing that under Indiana law, plaintiff need not state a claim for fraud if it sufficiently alleges that corporate misuse "promotes injustice").

Recognizing this distinction in Indiana law, the court in *Ketchem v. Am. Acceptance, Co., LLC* noted that Rule 9(b)'s heightened pleading standard only applies when a plaintiff attempts to pierce the corporate veil by alleging fraud. *See* 641 F. Supp. 2d 782, 787 n.1 (N.D. Ind. 2008). If the plaintiff exclusively attempts to state a claim by alleging that the misuse of the corporate structure "promotes injustice," then the heightened pleading standard is inapplicable because there is no allegation of fraud to invoke Rule 9(b). *See id.* ("Some jurisdictions apply the heightened pleading standard of Rule 9(b) where veil piercing claims are based on allegations of fraud, necessitating the pleading of facts which give rise to a strong inference that the defendant acted with fraudulent intent. [Plaintiff's] claims are not premised on fraud and so are subject to the more lenient pleading requirements of Rule 8(a)(2).") (internal citation omitted). Like the plaintiff in *Ketchem*, Montello has not alleged that Hartford's misuse of the corporate identity constituted fraud; it has exclusively based its claim for alter-ego liability on the allegation that Hartford's misuse of the corporate form promotes injustice. *See* Third-Party Complaint at 9-14, Docket No. 22 (alleging only that "injustice will occur" if Twin City's corporate veil is not pierced). Accordingly, Montello's claim of alter-ego liability is "subject to the more lenient pleading requirements of Rule 8(a)(2)." *See Ketchem*, 641 F. Supp. 2d at 787 n.1.

C.  Sufficiency of the Pleadings

The final determination to be made with regard to Montello's claim for alter-ego liability against Hartford is whether Montello has sufficiently stated a claim under Rule 8(a)(2) pleading standards and Indiana law. Again, under Indiana law, Montello must plead both prongs of the test used to determine whether a corporation's veil may be pierced: first, that "the corporate form

11

was so ignored, controlled or manipulated that it was merely the instrumentality of the other,"

and second, that the "misuse of the corporate form would constitute fraud or promote injustice."

*Escobedo*, 818 N.E.2d at 933.

With regard to the first prong of Indiana's test, Montello alleges that

> 32.     Hartford and Twin city are alter egos of each other that share a unity of
> interest and ownership and operate as a single enterprise for purposes of the
> imposition of liability herein . . .
> . . .
>> b.     Hartford, as Twin City's ultimate parent company, uses Twin City
>> as a mere conduit through which it conducts insurance business in states in
>> which the Hartford is not admitted to conduct any business whatsoever . . .
>> . . .
>> k.     Twin City and Hartford completely disregard appropriate legal
>> formalities and fail to maintain arm's length relationships in their dealings
>> with one another in that Hartford conducts and controls all of the most
>> basic insurance functions of Twin City with respect to insurance contracts
>> like the one at issue here (including contract drafting, marketing, sales,
>> underwriting, claims adjustment, and related litigation), without entering
>> into any written agreements with Twin City in those regards, and without
>> any input or approval by Twin City in those regards.
>> . . .
>> p.     By choosing the insureds which [*sic*] whom Twin City contracts
>> under Hartford's policies nominally issued by Twin City, Hartford
>> effectively controls the premium revenue  Twin City will derive from such
>> policies.  By choosing which claims it will honor or reject, Hartford
>> effectively controls the claim costs that Twin City will incur for claims
>> made against its insureds under such policies.
>> . . .
>> r.     . . . Hartford, as the parent, dictates every facet of Twin City's
>> business, from broad policy decisions to routine matters of day-to-day
>> operations.

Third-Party Complaint ¶ 32(b), (k), (p), (r), Docket No. 22.  Montello has clearly alleged that

Hartford ignores the corporate form such that Twin City is merely an instrumentality of Hartford.

Therefore, the court finds that these allegations are sufficient to state a claim under the first

prong of Indiana's test.

With regard to the second prong of Indiana's test, Montello's allegations are not as clear:

32.     Hartford and Twin City are alter egos of each other that share a unity of
interest and ownership . . . .
. . .
            b.     . . . Hartford, as Twin City's ultimate parent company, uses Twin
            City as a mere conduit through which it conducts insurance business in
            states in which the Hartford is not admitted to conduct any business
            whatsoever, much less admitted to conduct the business of insurance; and
            *Hartford attempts to shield itself from liability* based upon Twin City's
            activities in states in which Twin City engages in the business of insurance
            at Hartford's behest and under its complete domination and control.
            . . .
33.     Upon information and belief, Montello alleges that *an injustice will occur*
if the fiction of corporate separateness between Hartford and Twin City is not
disregarded.   Montello contends that the Court should not permit Hartford to
*shield itself from contract liability* behind Twin City's corporate shell, on the
ground that Twin City and not Hartford, is the only nominally named insurer on
the policy.

*Id.* ¶¶ 32(b), 33 (emphasis added).  The sufficiency of these allegations to state a claim for alter-

ego liability is a much closer issue.  Because Montello does not allege fraud in the Third-Party

Complaint, these allegations can only be interpreted as an attempt to state a claim under the

"promotes injustice" portion of Indiana law.

In *Sea-Land Services, Inc. v. The Pepper Source*, the Seventh Circuit interpreted the

meaning of "promotes injustice" within the substantially similar[12] corporate veil-piercing law of

Illinois.  *See generally* 941 F.2d 519 (7th Cir. 1991).  The court found that merely stating that one

would be unable to fully recover its damages was insufficient to state a claim under the

_____

[12] Illinois' test for piercing the corporate veil states,
            a corporate entity will be disregarded and the veil of limited liability pierced when
            two requirements are met:
                        [F]irst, there must be such unity of interest and ownership that the separate
                        personalities of the corporation and the individual [or other corporation]
                        no longer exist; and second, circumstances must be such that adherence to
                        the fiction of separate corporate would sanction a fraud or promote
                        injustice.
Van Dorn Co. v. Future Chem. & Oil Corp., 753 F.2d 565, 569-70 (7th Cir. 1985) (quoting
Macaluso v. Jenkins, 420 N.E.2d 251, 255 (Ill. App. Ct. 1981)).  This test is substantially similar
to that utilized in Indiana, as it contains two similar prongs and is stated in the conjunctive.

"promotes injustice prong of the test," reasoning that if that were sufficient, every claimant for

corporate veil-piercing would satisfy the standard. *See id.* at 522-23.  After a thorough analysis

of existing case law, the Seventh Circuit concluded:

> [T]he courts that properly have pierced corporate veils to avoid "promoting injustice" have found that, unless it did so, some "wrong" beyond a creditor's inability to collect would result: [e.g.,] . . . a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities [if the corporate veil were not pierced] . . .

*Id.* at 524 (summarizing fact scenario found to "promote injustice" from *In re* Conticommodity

Servs., Inc., Securities Litigation, 733  F. Supp. 1555, 1565 (N.D. Ill. 1990)).  Like the case

referenced in *Sea-Land*, Montello alleges that Twin City is merely a nominal corporation

operated by Hartford for the purpose of shielding Hartford from liabilities sustained with respect

to Twin City insurance policies.  *See* Third-Party Complaint at 10, 13, Docket No. 22.

Montello's claims essentially allege that Hartford is misusing Twin City's corporate form for the

improper purpose of shielding itself from liability for which it is responsible.  Such a "wrong" is

a sufficient allegation to state a claim pursuant to Rule 8(a)(2) pleading standards and the second

prong of Indiana's test.

Therefore, this court finds that Montello has sufficiently pleaded information to support

its claim for alter-ego liability under Indiana law.  Accordingly, Hartford's Motion to Dismiss

Montello's claim for alter-ego liability, stated in paragraphs 32 and 33 of the Third-Party

Complaint, is DENIED.  Further, Hartford's Motion to Strike paragraphs 32 and 33 of the Third-

Party Complaint is likewise DENIED.

II.  Agency Liability

As an alternative to its alter-ego theory of liability, Montello has alleged that "Twin City

and Hartford are agents, partners, joint ventures or co-conspirators of each other and . . . were

acting within the scope of its authority as such and with the permission and consent of each of the other." Third-Party Complaint ¶ 34, Docket No. 22. Montello concludes that Twin City acted as Hartford's agent. *Id.* To provide a factual basis for this allegation of agency, Montello essentially alleges the same factual basis as that of its alter-ego claim: that "Hartford, not Twin City is the actual insurer that engages in the core business of insurance with respect to the policy at issue" in a manner that involves the misuse of the corporate form. *Id.*

The court is aware of precedent in which a parent company may be held liable for the wrongful actions of their subsidiaries based on an agency theory. *See, e.g.,* Esmark, Inc. v. Nat'l Labor Relations Bd., 887 F.2d 739, 756-757 (7th Cir. 1989) ("[A] parent corporation may be held liable for the wrongdoing of a subsidiary where the parent directly participated in the subsidiary's unlawful actions. . . . [In such cases] [t]he owner's liability was based on its control of its subsidiaries' actions from 'behind the scenes.' Thus the parent was not held 'directly liable'; it was liable derivatively for transactions of its subsidiary in which the parent interposed a guiding hand.") (internal citations omitted). However, such precedent is distinguishable.

The precedent recognizes that a parent company may be held liable for the wrongdoing of a subsidiary when the parent participated in that wrongful action. In contrast, Montello has alleged no wrongful action on the part of the subsidiary Twin City. Montello states a claim for declaratory judgment against Twin City and Hartford, and such action by its very nature demonstrates that wrongful action on the part of Twin City has yet to take place. If it had, Montello would assert an action for breach of contract instead of a declaratory judgment. For this reason, the court finds that Montello has failed to state a claim for relief against Hartford based on an agency theory.

Furthermore, analysis of the factual claims alleged in support of Montello's agency theory demonstrates that the claim is in fact merely a re-allegation of Montello's alter-ego claim. The factual allegations stated by Montello in support of its agency claim are in fact supportive of a claim for alter-ego liability: Montello essentially alleges that Twin City was merely an instrumentality of Hartford, and that Hartford utilized the corporate structure of Twin City to operate in states where Hartford "may not be admitted to conduct insurance business." *See* Third-Party Complaint ¶ 34, Docket No. 22 (generally alleging many of the same facts as are alleged in Montello's claim for alter-ego liability, *see id.* ¶ 32-33). These factual allegations support a claim for corporate veil piercing, not agency liability. As the court has already determined that Montello has stated a claim for alter-ego liability against Hartford, the agency theory is superfluous in addition to failing to state a claim.

Therefore, Hartford's Motion to Dismiss Montello's alternative claim against Hartford based on agency theory, stated in paragraph 34 of the Third-Party Complaint, is GRANTED. Accordingly, Hartford's Motion to Strike paragraph 34 of Montello's Third-Party Complaint is likewise GRANTED.

## CONCLUSION

For the reasons cited herein, Hartford's Motion to Dismiss (Docket No. 60) is DENIED IN PART and GRANTED IN PART. Montello's claim against Hartford based on agency, as contained in paragraph 34 of the Third-Party Complaint, is DISMISSED. Hartford's Motion to Strike (Docket No. 62) is likewise DENIED IN PART and GRANTED IN PART. Paragraph 34 of the Third-Party Complaint is hereby struck from the record.

IT IS SO ORDERED this 30th day of September, 2011.

16

James H. Payne
United States District Judge
Northern District of Oklahoma